MAGDALENE HUMMELL, INDIVIDUALLY, AND MAGDALENE HUMMELL, EXECUTRIX OF THE ESTATE OF CALLIE ELIZABETH HUMMELL, DECEASED, v. LOUIS HUMMELL, ELIZABETH HUMMELL BRIGGS, LESLIE RAY HUMMELL, WILL HICKS HUMMELL, MINOR, AND SAM DRAPER HUMMELL, MINOR.

(Filed 15 December, 1954.)

1. Wills § 33c—

Where no other time is fixed by the will and no preceding estate is created, an estate vests *eo instante* the maker's death.

2. Wills § 34b—

A devise and bequest to named children of testatrix, "or survivors," carries the estate to the named children who are living at the time of the testatrix' death as purchasers under the will, and upon the death of one of testatrix' children after the execution of the will but prior to the death of testatrix, such child is not a survivor so as to take under the will and such child's heirs and distributees cannot take through him by inheritance.

APPEAL from *Bone, J.,* August-September 1954 Term, WAYNE, by the plaintiff, individually, and as executrix; and by Louis Hummell and Elizabeth Hummell Briggs.

Callie Elizabeth Hummell, widow, died on 29 June, 1952, in the County of Wayne. She left her holograph will which was duly admitted to probate in the county of her residence. The will is as follows:

"At my death I desere everything I I possess or may possess both real & personal or mixed to be equally deveded between my children, Magdalene, Leslie Ray Louis & Elizabeth Hummell Briggs or survivors—I appoint—Magdalene, Leslie Ray, Hummell executors of my will, without bond.

"10-19-46. Callie Elizabeth Hummell."

At the time of the execution of the will the testatrix had four living children: Magdalene Hummell, Leslie Ray Hummell, Louis Hummell, and Elizabeth Hummell Briggs. At some time (the date not given) after the execution of the will and before the death of the testatrix, Leslie Ray Hummell died, leaving as his distributees and heirs at law three sons, Leslie Ray Hummell, now of age; Will Hicks Hummell, minor; and Sam Draper Hummell, minor. Magdalene Hummell qualified, and is now acting as executrix and, as such, brings this proceeding for advice and instruction by way of declaratory judgment as to the proper distribution of the estate and the determination as to who shall take under the will. The two minors are represented by a guardian *ad litem.* Judge Bone, after hearing, entered his judgment in material part as follows:

"The court being of the opinion that the beneficiaries of the will of Callie Elizabeth Hummell, deceased, are Magdalene Hummell, Louis

Hummell, Elizabeth Hummell Briggs, and the children of Leslie Ray Hummell, deceased, who are Leslie R. Hummell, Jr., Will Hicks Hummell, and Sam Draper Hummell, said parties are hereby declared to be the beneficiaries under said will, both as to real and personal estate, in the following shares: Magdalene Hummell, one-fourth share; Louis Hummell, one-fourth share; Elizabeth Hummell Briggs, one-fourth share; Leslie R. Hummell, Jr., one-twelfth share; Will Hicks Hummell, one-twelfth share; Sam Draper Hummell, one-twelfth share."

Magdalene Hummell, Louis Hummell, and Elizabeth Hummell Briggs excepted to the judgment, and from it appealed.

*Dees & Dees for Magdalene Hummell, Executrix, appellant.*

*James N. Smith for Magdalene Hummell, Individually, appellant.*

*Hicks & Taylor for Leslie Ray Hummell, Will Hicks Hummell and Sam Draper Hummell and Mrs. Elizabeth Hicks Hummell, guardian ad litem for Will Hicks Hummell and Sam Draper Hummell, appellees.*

HIGGINS, J.   The sole question for decision here is whether the gift to the four named children *or survivors* carried the entire estate to the three children of the testatrix who survived her, or whether the children of Leslie Ray Hummell, who predeceased the executrix, took the share intended for him.   It is patent the will was intended to dispose of the maker's estate.   Those who take under the will, take as purchasers.   By the use of the words *"or survivors"* the intention is clear the survivors shall be determined as of the date of the maker's death.   This must be so for the reason that no preceding estate is given and no other time is fixed for vesting the estate.   The estate vested *eo instante* the maker's death. Did it vest in Magdalene, Louis, and Elizabeth as survivors and exclude the children of Leslie Ray?   Or did his children represent him and take his share?   Did he have a share?   It seems plain he did not have a share because he was not here to take at the time the will went into effect.   His death excluded him from the will because he was not a survivor.   The only way his children can take is to qualify *as survivors.*   If they take at all, they cannot take by inheritance because the father died before he had any estate under the will.

The word "survivor" has been given various definitions.   The word means: One who outlives another; one who outlives another person, a time or an event; one who continues to live after the death of those who comprise his group.

This Court has been called upon from time to time to determine who take as "survivors" under a will.   Usually other complicating provisions appear in the will.   Not infrequently survivors are to be determined at the end of a life estate or upon the happening of some contingency.   How-

ever, the rules are so stated as to leave no doubt that they apply with equal force when the survivors are to be determined as of the date of the testator's death.

In the case of *Gregory v. Beasley*, 36 N.C. 25, this Court held: "There are three sets of claimants upon the share that fell to the intestate,. Mary Lucilla Gregory—first, the two surviving brothers; secondly, the two surviving brothers and the defendant, the administrator of the deceased sister, Maria; thirdly, the next of kin of Mary Lucilla, under the statute of distributions.

"The executory devise being good in law, the next of kin, as such, have, we think, no right to any of the share. It is very probable that the testator, if he could have foreseen the events which have happened, might have limited a part of this fund to the child of Maria. But this Court can only construe wills; it is not allowed to make them for testators. The testator has said that if one, or two, or three, of his children should die under age or without issue, 'for all the property to go to the *surviving ones forever.*' The meaning is that all the property, or original shares of one, two, or three of his children dying before coming of age or without issue, should go over to the child or children *then* surviving. The expression, *'surviving ones,'* shows this to be his meaning . . . Yet he says (in the clause) that if either die under age and without issue, the property is to go to the survivors, which *tends* to show that he did not mean to limit the contingency up to the time of the division only, but afterwards, also, if the event should occur. Mackey and Frederick, being the only children surviving at the death of their sister, Mary Lucilla, are entitled to the said share in moieties."

In the case of *Skinner v. Lamb*, 25 N.C. 155, this Court said: "The Judge was of opinion that the plaintiffs were entitled to recover these slaves. And we are of the same opinion, upon the authority of *Gregory v. Beasley*, 36 N.C. 25, and *Threadgill v. Ingram*, 23 N.C. 577; *Ferguson v. Dunbar*, 3 Bro. C. C., 469, in note (Belt's Ed.); 2 Roper on Legacies, 322. On the death of Matilda, leaving a child, the hopes and interest of the testator's brother, Thaddeus, (the ulterior legatee), were extinguished; because he could never take, unless *all* the daughters died without leaving issue. The three original legacies were vested, on the death of the testator, subject each to be divested, and go over to the survivor or survivors, on the death of either legatee without issue. In this case, Elizabeth is the only *survivor,* and must take the entire legacy that had been assigned to Orange, who died without issue. The Court regrets that the child of Matilda is excluded, but we can only construe wills, and are not authorized to alter or make them." (*Skinner v. Lamb* decided after *Gregory v. Beasley*.)

In the case of *Threadgill v. Ingram,* 23 N.C. 577, decided in 1841, this Court said: "Must not the representative deduce his title by averring that his principal was the survivor? Could the representative have any pretense of claim without such averment? We think he could not. If, therefore, the representative's principal was actually the survivor, he, the principal, must inevitably be permitted to take personally, and all chances of a perpetuity would of course cease. In the case now before the Court the superadded words ('and their heirs forever') appear to us to have been inserted only to denote the extent of the interest in the property that the survivors should take, and not as a limitation to a description of persons who might at any indefinite time claim as *heirs.* How could a person claim as heir to a survivor, if the ancestor was not *in esse* at the death of the first taker, so as to acquire the character of survivor? The thing appears absurd. It seems to us that no other presumption can arise in this case but that the testator intended a personal benefit to the survivors, and that the superadded words which he has made use of do not repel the presumption. *Hughes v. Sayer,* 1 P. W. 534.

"Secondly, John died in 1800. Did his two children or his representative take? We think they do not take. The executory devise to John, in the legacy given to Jesse, was contingent; and, as John did not survive Jesse, the executory devise never vested in him; and, therefore, there was nothing to be transmitted either to his representative or children."

And we quote from the case of *Ham v. Ham,* 168 N.C. 486, 84 S.E. 840: "It is clear that the testator used the words, 'shall go to the *others that are living,*' in the passage above quoted, in the sense of the survivors of the brothers, which would not include the children of a deceased brother, because the word 'others' plainly refers to them, the brothers, when read with what precedes it, and it is immediately followed by the expression, 'but not to any of my *other* children' which demonstrates that the word 'other' meant only children, and they could only be the sons, as it referred to the children before mentioned in the will. That this is the plain, natural, and grammatical construction is hardly arguable. This brings the case directly within the following authorities. It appeared in *Threadgill v. Ingram,* 23 N.C. 577, that a testator had bequeathed all his personal property to his four children, to be equally divided between them when his son A. arrived at the age of 21 years; and if one or two or three should die under age, or *without issue,* all the property to go to the surviving ones forever. A daughter died before her arrival at full age, leaving no children, but after A. had attained 21 years. It was held that her share went over to the survivors then living, and that a child of a sister, who had died after attaining full age, was not entitled to any part of it. *Judge Daniels* added: 'Must not the representative deduce his title by averring that his principal was the survivor? Could the representa-

tive have any pretense of claim without such averment? We think not. How could a person claim as heir to a survivor, if the ancestor was not *in esse* at the death of the first taker, so as to acquire the character of survivor? The thing appears absurd. It seems to us that no other presumption can arise in this case but that the testator intended a personal benefit to the survivors, and that the superadded words which he has made use of do not repel the presumption.' And the language of *Judge Pearson,* in *Hilliard v. Kearney,* 45 N.C. 221, is equally emphatic: 'The argument fails, because there are no words showing an intention to give a preference to such of the daughters as died leaving children, except to the extent of making the shares absolute at their deaths. . . . There is this further objection: If the words "other sisters" do not refer to the death of one, so as to be confined to the survivors, and is allowed to take in the others also, there is nothing to exclude such as had died without a child, which is absurd.' "

In the case of *Wooten v. Hobbs,* 170 N.C. 211, 86 S.E. 811, this Court said: "As a general rule only those persons can participate as survivors in a gift who are specifically included in the designation made in the will or answer the conditions annexed to the gift, and persons expressly excluded cannot share as survivors under other general conditions or designation in the will. The survivors, however, can only share in such property as is included by the will in the gift to survivors. In the absence of language showing a contrary intention, the share of a deceased beneficiary in case of survivorship will be divided among the survivors in equal shares."

The case of *Dicks v. Young,* 181 N.C. 448, 107 S.E. 220, cites with approval and includes the quotation herein given from *Threadgill v. Ingram, supra.*

In the case of *Mercer v. Downs,* 191 N.C. 203, 131 S.E. 575, this Court said: "Indeed the prevailing rule seems to be that if an estate is given by will to the survivors of a class to take effect on the death of the testator, the word 'survivors' means those living at the death of the testator; but if a particular estate is given and the remainder is given to the then survivors of a class, the words 'survivors' means those surviving at the termination of the particular estate."

We have sought in vain for authority upon which to hold the grandsons of the testatrix can share in her estate. Lapsed legacy statutes offer no help. If the will had named the four children and omitted the words "or survivors," the statutes would apply and the children of Leslie Ray would take the share intended for their father. Mrs. Hummell made the gift in her will to her four named children, *or survivors.* Only Magdalene Hummell, Louis Hummell, and Elizabeth Hummell Briggs can qualify as survivors. This construction, we think, is mandatory under

the decisions of this Court which apparently have become a stable part of the law of wills. Magdalene Hummell, Louis Hummell, and Elizabeth Hummell Briggs each take a one-third share of the estate.

Reversed.